

# United States District Court
## DISTRICT OF ARIZONA

UNITED STATES OF AMERICA
v.
Nelson GUTIERREZ-Sierra
Aka : Nelson OLIVARES-Sierra
Aka : Nelson GUTIERREZ-Sina
Y.O.B. 1976

## CRIMINAL COMPLAINT
CASE NUMBER: 09-0004 M

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

### Count 1

On or about December 30, 2008, at or near Phoenix, in the District of Arizona, defendant Nelson Gutierrez-Sierra, knowingly and in reckless disregard of the fact that a certain alien, Alejandro Torres-Mojica, had come to, entered, and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation and otherwise, for the purpose of commercial advantage and private gain, in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) & (a)(1)(B)(i).

### Count 2

On or about December 30, 2008, at or near Phoenix, in the District of Arizona, defendant Nelson Gutierrez-Sierra, did unlawfully aid and abet a certain alien, Alejandro Torres-Mojica, to evade and elude examination and inspection by Immigration Officers of the United States of America; in violation of Title 8, United States Code, Section 1325(a)(2) and Title 18, United States Code, Section 2.

I further state that I am a Special Agent for the Department of Homeland Security, United States Immigration and Customs Enforcement and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein**

AUTHORIZED BY: AUSA, Walter Perkel

_____
Signature of Complainant, Anthony Sinatra, Special Agent

Sworn to before me and subscribed in my presence, January 2, 2009, at Phoenix, Arizona.

_____
Signature of Judical Officer
Michelle H. Burns
United States Magistrate Judge

## STATEMENT OF PROBABLE CAUSE

I, Anthony Sinatra, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent for the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), and have been employed as a U.S. Federal Agent for over two (2) years. I have conducted numerous investigations related to criminal violations of the U.S. Immigration and Nationality Act.

2. The facts set forth herein are not meant to include all information gathered with regard to the subject identified herein, the locations described, or the investigation in general; rather, these facts are meant to provide information sufficient for the purposes of the affidavit.

3. I have learned from direct participation in the investigation and from the reports and communications of other special agents the following facts:

4. On or about December 28, 2008 until the present day, I along with several other ICE special agents have participated in an ongoing hostage investigation involving ALEJANDRO TORRES-MOJICA ("victim") who was held against his will, threatened, and ransomed by alien smugglers.

5. On December 19, 2008, the victim's brother, JUAN MIRANDA, the reporting party ("RP"), received a phone call on his home telephone from alien smugglers who stated that they were holding the victim hostage in Nogales, Sonora, Mexico. The smugglers demanded $300; RP subsequently wired $300 on December 19, 2008.

6. On December 25, 2008, the RP received another phone call from the smugglers,

3

wherein the RP was informed that the victim is now in Nogales, Arizona. The smugglers also demanded an additional $2,500 in exchange for the release of the victim or the smugglers threatened that he would be sent to the RP in a body bag.

7. On December 26, 2008 the smugglers called the RP and agreed to accept $1,500 for the release of the victim. The RP subsequently wired $1,500.

8. On December 27, 2008, the smuggler called the RP again and instructed him to send another $500 for the release of the victim. The RP requested to speak with his brother on the phone. The smuggler agreed. The victim told the RP that the smugglers had a gun to his head and would kill him if the RP didn't send money.

9. On December 28, 2008, the RP received a series of phone calls from the smugglers starting at approximately 0839 hours demanding $500 for the release of the victim. At 1039 hours, ICE Agent Levitin recorded a portion of a telephone conversation between the smugglers and the RP wherein a smuggler asked the RP if he had the money for the release of the victim. When the RP told the smuggler he did not have the money and that he needed more time, the smuggler told the RP "No, you have to be done today. You have to send the money to Western Union." The RP told the smugglers he did not have the money and the conversation ended. At approximately 1115 hours, the smugglers called the RP again. The RP told the smugglers that he did not trust them as he had already paid for the victim's release, and still had not seen the victim. The RP told the smugglers that he wanted reassurance that the victim was "Ok." The smugglers responded by saying, "No, send the money!" thereby ending the

phone call.

10. On December 28, 2008, between 1115 hours and 1147 hours, the RP spoke with one of the smugglers again. The smuggler allowed the RP to speak with the victim, who confirmed that he was "ok" and that the smugglers were not hitting him anymore. The smugglers asked the RP to give them the number of friend who could pay the fee. Later on that day, a phone number was given to the smugglers.

11. On December 28, 2008, an ICE agent, posing as the friend of the RP, received a phone call from the smugglers who were using telephone number (602) 434-4745. This agent spoke with the victim and the smugglers.

12. On December 29, 2008, pursuant to electronic surveillance, ICE agents were able to determine that said cell phone number (602) 434-4745 described above was being used from inside 4032 West Osborn Road, apartment #119, Phoenix, Arizona.

13. On or about December 30, 2008, at approximately 1430 hours U.S. federal agents were preparing to serve a federal search warrant at the residence located at the above stated residence.

14. Prior to executing the warrant, ICE special agents observed two male subjects exit said residence and get into a motor-vehicle, a maroon Chevrolet Impala bearing AZ license plate ABT7096 and leave the area. ICE Agents conducted a stop of said motor-vehicle near the 3800 block of North 43rd Avenue, Phoenix, Arizona. ICE Agents found four Hispanic males in said vehicle vehicle.

15. Agents observed that one such male, who they later learned to be ANGEL

MENDOZA-ROMERO, seated in the rear seat of said motor-vehicle directly behind the operator of said vehicle.

16. Agents also observed a second male, who they later learned to be Alejandro Torres-Mojica, seated directly next to Mendoza-Romero in the rear passenger seat.

17. ICE Agents confirmed that it was these two men, Mendoza-Romero and Torres-Mojica, who had just left the residence at 4032 West Osborn Road, apartment #119 and entered said motor-vehicle.

18. Agents also observed a third male, who they later learned to be NELSON GUTIERREZ-SIERRA, seated in the driver's seat of said motor-vehicle directly behind the steering wheel.

19. Torres-Mojica stated that he was a Mexican national and had not received permission to be present in the U.S. He further identified Mendoza-Romero as the alien smuggler who had been holding him hostage for several days at the apartment on Osborn Road and who had demanded an increased smuggling fee from his brother, Juan Miranda. Torres-Mojica explained, stating in substance, that Mendoza-Romero beat him while Torres-Mojica was on the telephone demanding the increased smuggling fees, and also that Mendoza-Romero had pointed a gun at him.

20. Underneath the front driver's seat directly in front of where Mendoza-Romero was seated, ICE agents recovered a loaded 9mm handgun. In addition, ICE agents recovered a cellular phone, with phone number (602) 434-4745, in the pouch area at the back of the front driver's seat directly in front of where Mendoza-Romero was seated. I believe that said recovered cell phone was used by the smugglers.

21. Gutierrez-Sierra was transported to a Phoenix ICE Office for further processing, and was identified as a Mexican national who was in the United States without authorization.

22. At the Detention area, Nelson Gutierrez-Sierra was advised of his Miranda Rights, and agreed to answer questions without legal counsel present. Gutierrez stated in substance that he worked for Mendoza-Romero in that Mendoza-Romero would pay Gutierrez weekly or as long as he ran errands for Mendoza-Romero. Gutierrez-Sierra further stated in substance that he always met with Mendoza-Romero in the parking lot area near the above stated apartment to receive money and a shopping list from Mendoza-Romero in order to buy food for Mendoza-Romero and the aliens.

23. On December 30, 2008, the victim Alejandro Torres-Mojica identified Gutierrez – Sierra as the driver of the above describe motor-vehicle. Torres also identified Gutierrez-Sierra as the individual who brought food to the apartment for the smugglers during the previous days.

24. For these reasons, the affiant has probable cause to believe that on or about December 30, 2008, at or near Phoenix, in the District of Arizona, defendant Gutierrez-Sierra, knowingly and in reckless disregard of the fact that a certain alien, Alejandro Torres-Mojica had come to, entered, and remained in the United States in violation of law, did transport and move said alien within the United States by means of transportation, and otherwise, for the purpose of commercial advantage and private gain, in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) & (a)(1)(B)(i).

25. For these reasons, the affiant has probable cause to believe that on or about December 30, 2008, at or near Phoenix, in the District of Arizona, defendant Nelson Gutierrez-Sierra, did unlawfully aid and abet a certain alien, Alejandro Torres-Mojica, to evade and elude examination and inspection by Immigration Officers of the United States of America; in violation of Title 8, United States Code, Section 1325(a)(2) and Title 18, United States Code, Section 2.

_____
Anthony Sinatra, Special Agent
Immigration & Customs Enforcement


Sworn to and subscribed before me personally
This 2nd day of January, 2009.

_____
Michelle H. Burns
United States Magistrate Judge